**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Dana Cimera
28 Liberty St. 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

**JOSEPHSON DUNLAP, LLP**
Michael A. Josephson (*Pro Hac Vice forthcoming*)
Andrew W. Dunlap (*Pro Hac Vice forthcoming*)
Rachael V. Rustmann (*Pro Hac Vice forthcoming*)
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: (713) 352-1100

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON MINTER, Individually and for Others Similarly Situated,<br><br>v.<br><br>HESS CORPORATION, | Case No. 22 Civ. 1538 |

### ORIGINAL COLLECTIVE AND CLASS ACTION COMPLAINT

1. Jason Minter (Minter) brings this lawsuit to recover unpaid overtime wages and other damages from Hess Corporation (Hess) under the Fair Labor Standards Act (FLSA) and the North Dakota Century Code Title 34 and the North Dakota Minimum Wage and Work Conditions (North Dakota Wage Laws).

2. Hess failed to pay Minter and certain oilfield workers overtime as required by state and federal law.

3. These workers regularly work more than 40 hours a week, but Hess does not pay them overtime.

4. Instead, Hess pays them a fixed amount per day worked in the field, regardless of the number of hours they work.

5. Hess's policy of paying these employees a day rate, with no overtime pay, violates the FLSA and North Dakota Wage Laws.

6. This collective and class action seeks to recover the unpaid wages and other damages owed to these workers.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims because they arise from a common nucleus of operative facts.

9. This Court has personal jurisdiction over all the claims against Hess because Hess is domiciled in this District.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) & (c) because Hess resides in this District.

## THE PARTIES

11. Jason Minter is an adult individual who worked for Hess.

12. Hess employed Minter as a pipeline inspector from approximately October 2019 through February 2020 and again from June 2021 to October 2021.

13. As a pipeline inspector, Minter's duties included inspecting pipelines for faults, damage, corrosion, and leaks, submit daily reports regarding the construction of the pipeline, and other non-exempt work.

14. Hess hired Minter and paid him for his work according to its "day rate" policy.

15. Information related to Minter's pay rate is reflected in Hess's pay documents.

16. Hess told Minter he would need to go through a contracting company to be paid.

17. However, all the work Minter performed was on Hess's locations, under Hess's direction, and for Hess's benefit.

18. His written consent is attached as Exhibit A.

19. Minter brings this action on behalf of himself and all other similarly situated inspectors who were paid under Hess's day rate system (the "Day Rate Workers").

20. Hess paid each of the Day Rate Workers a flat amount for each day worked with no overtime premium for hours worked in excess of 40 in a workweek.

21. Hess is headquartered in New York, New York.

22. First, Minter represents a class of similarly situated employees under the FLSA pursuant to 29 U.S.C. § 216(b). The FLSA class is defined as:

> **All inspectors who were, at any point in the past 3 years, paid under Hess's day rate system (the "FLSA Class Members")**

23. Second, Minter represents a class of similarly situated employees under the North Dakota Wage Laws pursuant to Federal Rule of Civil Procedure 23. The North Dakota Class is defined as:

> **All inspectors of Hess who were, at any point in the past 2 years, paid under Hess's day rate system and who performed work in North Dakota (the "North Dakota Class Members")**

24. Collectively, the FLSA Class Members and North Dakota Class Members are referred to as the "Putative Class Members."

## COVERAGE UNDER THE FLSA

25. At all relevant times, Hess was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

26. At all relevant times, Hess was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

27. At all relevant times, Hess was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or

employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, and personal protective equipment - that have been moved in or produced for commerce.

28. At all relevant times, Hess had an annual gross volume of sales made in excess of $500,000.

29. At all relevant times, Minter and the Putative Class Members (defined below) were engaged in commerce or in the production of goods for commerce.

30. At all relevant times hereinafter mentioned, Defendant employed Minter and the Putative Class Members as employees and applied its day rate pay practice to Minter and the Putative Class Members.

## THE FACTS

31. Hess is a "a leading global independent energy company engaged in the exploration and production of crude oil and natural gas."[1]

32. Hess's employees routinely handle goods or materials – such as hard hats, tools, steel toe shoes, automobiles, and cell phones - that have moved in, or were produced for, interstate commerce.

33. Hess's annual gross revenues have exceeded $1,000,000,000 in each of the last 3 years.

34. Hess operates in several different oil and gas fields, including "a key U.S. shale play -- the Bakken in North Dakota."[2]

35. Over the past three years, Hess employed dozens of individuals – including Minter – as Inspectors (or similar positions) in several states.

36. All these workers performed similar job duties out in the oilfield.

37. These workers work long hours.

---

[1] https://www.hess.com/company (last visited January 6, 2022).

[2] *Id.*

4

38. Minter regularly worked a 12-hour shift for each day he worked.

39. Therefore, a typical workday for Minter was 12 hours long.

40. Minter regularly worked 72 to 84 hours a week.

41. Hess's records show the days Minter worked, as well as the fact he regularly worked as many as 7 days in a week.

42. Hess knows Minter, and the other workers like him, worked more than 40 hours in a week.

43. Hess knows these workers are not exempt from the FLSA's overtime provisions.

44. Nonetheless, Hess failed to pay Minter and the other Day Rate Workers overtime for those hours exceeding 40 in a workweek.

45. Instead, Hess pays these workers a day rate for each day worked.

46. Hess is well aware of the overtime requirements of the FLSA.

47. Hess has been involved in more than half a dozen wage and hour case in the past decade alone.

48. In addition, Hess has been sued previously for similar FLSA violations.

49. Hess knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA and North Dakota law.

50. At all relevant times, Hess maintained control, oversight, and direction over Minter and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

51. Hess applied the same employment policies, practices, and procedures to all Inspectors including policies, practices, and procedures with respect to payment of overtime compensation.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

52. Defendant's illegal day rate pay policy extends beyond Minter.

53. The illegal pay practices Defendant imposed on Minter were likewise imposed on the Putative Class Members working for, or on behalf of, Defendant.

54. Numerous individuals were victimized by Defendant's pattern, practice, and policy which is in willful violation of the FLSA.

55. Based on his experiences and tenure with Defendant, Minter is aware that such illegal practices were imposed on the members of the Putative Class.

56. Minter and the Putative Class Members like him were all improperly classified as exempt and not afforded the overtime compensation when they worked in excess of forty hours per week.

57. Defendant's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of any of the Putative Class Members like Minter.

58. Minter's experiences are therefore typical of the Putative Class Members who worked for, or on behalf of, Defendant.

59. The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent collective treatment.

60. Minter has no interests contrary to, or in conflict with, the members of the Putative Class Members. Like each member of the Putative Class Members, Minter has an interest in obtaining the unpaid overtime wages owed under federal law.

61. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

62. Absent this action, the Putative Class Members likely will not obtain redress of their injuries and Defendant will reap the unjust benefits of violating the FLSA.

63. Furthermore, even if some of the Putative Class Members could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system.

64. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the Putative Class Members and provide for judicial consistency.

65. Minter's claims are similar to the claims of the Putative Class Members who worked for, or on behalf of, Defendant who were classified as exempt and paid under its day rate pay policy. Minter and the Putative Class Members sustained damages arising out of Defendant's illegal and uniform employment policy.

66. Minter knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

67. Even if the number of hours worked by the workers like Minter varies, the proof and method for calculating damages is common.

68. Further, there is no detraction from the common nucleus of liability facts.

### FIRST CAUSE OF ACTION – VIOLATION OF THE FLSA

69. Minter incorporates by reference all other paragraphs.

70. Defendant has violated, and are violating, section 7 of the FLSA, 29 U.S.C. § 207, by compensating its employees under its pay rate pay policy in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating the FLSA Class Members for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

71. Defendant knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Class Members overtime compensation.

72. Defendant's failure to pay overtime compensation to these FLSA Class Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

73. Accordingly, Minter and the FLSA Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION – FAILURE TO PAY WAGES UNDER NORTH DAKOTA WAGE LAWS

74. Minter incorporates by reference all other paragraphs.

75. Minter brings this case as a Rule 23 Class action for the North Dakota Class Members consisting of "inspectors of Hess who were, at any point in the past 2 years, paid under Hess's day rate system and who performed work in North Dakota."

76. Defendant failed to pay premium overtime wages to Minter and the North Dakota Class Members in violation of North Dakota Century Code Title 34 and the North Dakota Minimum Wage and Work Conditions Order (N.D. Admin. Code § 46-02-07-01 et seq.) (the "North Dakota Wage Laws").

77. At all relevant times, Hess was subject to the requirements of the North Dakota Wage Laws.

78. At all relevant times, Hess employed each member of the North Dakota Class as an "employee" within the meaning of the North Dakota Wage Laws.

79. The North Dakota Wage Laws require an employer like Hess to pay employees at one and one-half times the regular rate of pay for hours worked in excess of 40 hours in any one week.

80. Minter and the members of the North Dakota Class were entitled to overtime pay under the North Dakota Wage Laws.

81. Within the relevant period, Hess had a policy and practice of failing to pay overtime to Minter and each member of the North Dakota Class for hours worked in excess of 40 hours per

workweek.

82. Through their knowing or intentional failure to pay Plaintiffs and the North Dakota Class the appropriate overtime wages for hours worked in excess of 40 hours per workweek, Defendant willfully violated the North Dakota Admin. Code, § 46-02-07-02(4).

83. Due to Defendant's willful violation of the North Dakota Admin. Code, Minter and each member of the North Dakota Class are entitled to unpaid overtime in amount equal to one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek; applicable interest; all available penalty wages; liquidated damages; and such other legal and equitable relief as the Court deems just and proper.

84. Minter and each member of the North Dakota Class are entitled to attorneys' fees, costs, and expenses of this action, to be paid by Hess, as provided by North Dakota law.

## RELIEF SOUGHT

85. Minter prays for judgment against Defendant as follows:

   a. For an order certifying a class action under Rule 23 for the purposes of the claims under North Dakota law;

   b. For an order certifying this case as a collective action for the purposes of the FLSA claims;

   c. For an order finding Defendant liable for violations of state and federal wage laws with respect to Minter and all Class Members covered by this case;

   d. For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Minter and all Class Members covered by this case;

   e. For a judgment awarding Minter and all Class Members covered by this case their costs of this action;

   f. For a judgment awarding Minter and all Class Members covered by this case their attorneys' fees;

     g.     For a judgment awarding Minter and all Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

     h.     For all such other and further relief as may be necessary and appropriate.

Dated:     New York, New York
February 24, 2022

Respectfully submitted,

*/s/ Joseph A. Fitapelli*
Joseph A. Fitapelli
**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

**Michael A. Josephson**\*
Texas State Bar No. 24014780
**Andrew Dunlap**\*
Texas State Bar No. 24078444
**Rachael Rustmann**\*
Texas State Bar No. 24073653
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rrustmann@mybackwages.com
\**pro hac vice application forthcoming*

**AND**

**Richard J. (Rex) Burch**\*
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com
\**pro hac vice application forthcoming*
**ATTORNEYS IN CHARGE FOR PLAINTIFF**