# EXHIBIT A

**Confidential Settlement Agreement and General Release**

This Confidential Settlement Agreement and General Release (the "Agreement") is between Jason Minter, including any representative, agent, attorney, heir, or any person or entity acting on his behalf ("Minter"); and Hess Corporation, for itself, and its current and former parent corporations, affiliates, related companies, predecessors, subsidiaries, acquired companies, successors, insurers (including, without limitation, Markel), reinsurers, and assigns, and each of their current and former officers, directors, employees, employee benefit plans and the administrators and fiduciaries of such plans, trustees, members, attorneys, and representatives ("Hess"). This Agreement is effective as of the date of delivery of the Agreement signed by Minter to Hess's legal counsel (the "Effective Date"). Minter and Hess are sometimes referred to collectively in this Agreement as the "Parties."

The Parties engaged in informal settlement negotiations and reached an agreement regarding the resolution of their disputes.

This Agreement sets forth the complete understanding between the Parties concerning settlement of Minter's claims against Hess, including, without limitation, claims which Minter made or could have made against Hess in the lawsuit filed under Case No. 22 Civ. 01538 styled *Jason Minter, individually and for others similarly situated v. Hess Corporation*; In the United States District Court for the Southern District of New York (the "Lawsuit").

Hess denies the allegations in the Lawsuit, and denies any guilt, violation of law, liability, or wrongdoing.

The parties desire to settle and dispose of all of Minter's claims that were or could have been asserted in the Lawsuit or that could have been asserted against Hess or Chippewa Resources, Inc. ("Chippewa") prior to the Effective Date of this Agreement.

In consideration of the promises contained in this Agreement, the Parties agree as follows:

1. <u>No Admission of Liability</u>. This Agreement is not and shall not be construed as an admission by Hess of any liability or wrongdoing; all such liability or wrongdoing are denied. This Agreement shall not be admissible in any legal proceeding except for the purpose of securing its enforcement.

2. <u>Hess's Payment to Minter</u>. In exchange for Minter's promises and obligations under this Agreement, Hess agrees to the following:

    a. *Settlement Payment*. Hess will pay Minter the sum of **thirty-six thousand and no/100 dollars ($36,000.00)** in settlement and compromise of all of Minter's claims and potential claims against Hess (the "Settlement Amount").

    b. *Payment*. At Minter's request, the Settlement Amount shall be paid as follows:

        i. A check payable to "Jason Minter" shall be issued for $20,569.51 for which an IRS Form 1099 will be issued as appropriate for the applicable tax year.

ii. A check payable to "Josephson Dunlap LLP" shall be issued for $15,430.49 in settlement and compromise of Minter's claim for attorneys' fees and costs, for which an IRS Form 1099 will be issued as appropriate for the applicable tax year.

c. *Delivery.* The payment described in paragraph 3.b shall be delivered to Josephson Dunlap LLP, 11 Greenway Plaza, Suite 3050, Houston, Texas 77046, within twenty-one days following the expiration of Minter's revocation rights under paragraph 9.d and Hess's receipt of signed IRS Form W-9s for Minter and his attorneys. Minter or his counsel shall timely advise Hess's counsel of any changes of address.

d. *Minter's Promise Regarding Taxes.* Minter understands that he is solely responsible for determining the tax consequences related to his receipt of the Settlement Amount and for complying with all federal, state, and local laws or regulations concerning reporting the settlement payment and satisfying any amounts owed as taxes. Minter agrees that, should any taxing authority assess any taxes, penalties, or interest against Minter as a result of the settlement payments or the allocation of the payments set forth in this paragraph 3, Minter will be solely responsible for the taxes, penalties, or interest, if any, which may be owed by Minter to any governmental agency as a result of the settlement payments, and Minter agrees that he will **INDEMNIFY, DEFEND, AND HOLD HARMLESS** Hess for any such taxes, penalties, or interest.

e. *New Consideration.* Minter acknowledges and agrees that Hess has no obligation to provide the consideration set forth in this Agreement, and that Hess would not have provided it except pursuant to this Agreement.

f. *Minter's Acknowledgement Regarding Medicare.* Minter is not a Medicare beneficiary, is not enrolled in the Medicare program, and was not enrolled in the Medicare program at the time of the filing of the Lawsuit or anytime thereafter through the date of this Agreement.

Initial 

3. <u>Minter's General Release, Claims Not Released, and Related Provisions</u>.

a. *General Release of All Claims.* Minter hereby knowingly and voluntarily releases and forever discharges Hess and Chippewa from any and all claims, known or unknown, asserted or unasserted, which Minter has or may have against Hess and/or Chippewa as of the Effective Date of this Agreement, including, without limitation, any alleged violation of:

- The Fair Labor Standards Act ("FLSA");
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Older Worker Benefits Protection Act ("OWBPA");

2

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA");
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990 ("ADA");
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act ("FMLA");
- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act;
- Any other federal, state, or local law, rule, regulation, or ordinance;
- Any public policy, contract, tort, or common law; or
- Any basis for recovering costs, fees, or other expenses including attorneys' fees.

The foregoing claims shall collectively be referred to as the "Released Claims."

b. *Governmental Agencies.* Nothing in this Agreement prohibits or prevents Minter from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding, or other proceeding before any federal, state, or local government agency nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Minter's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Minter agrees that he shall not be entitled to recover any individual monetary relief or other individual remedies.

c. *DTSA Whistleblower Immunity Notification.* An individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in confidence to a federal, state, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law. An individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the legal proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to court or arbitrator's order.

d. *Damage and Collective/Class Action Waiver.* If any claim is not subject to release, to the extent permitted by law, Minter waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective, or multi-party action or proceeding based on such a claim

3

      in which Hess is a party; and Minter expressly waives any and all rights that he may have to recover damages of any kind against Hess.

    e. *Promise Not to File Other Claims*. Minter agrees, promises, and covenants that neither he, nor any persons, organization, or other entity acting on his behalf has or will file or cause or permit to be filed any claim, suit, action, charge, or other proceeding (whether judicial or administrative) for damages or other relief (including but not limited to injunctive, declaratory, monetary, or other relief) against Hess or Chippewa involving, related to, or arising out of any matter released in this Agreement.

4.    <u>Stipulation of Dismissal with Prejudice</u>. The Parties agree to notify the Court of settlement prior to August 31, 2022 (Hess's answer deadline). Minter agrees to file with the Court a Stipulation of Dismissal of the Lawsuit, with prejudice, in a form substantially similar to the stipulation attached to this Agreement as **Exhibit A** within five calendar days following receipt of the Settlement Amount.

5.    <u>Confidentiality of Settlement</u>. Minter promises to keep the terms of this Agreement strictly confidential and that he will not disclose the terms of this Agreement to anyone (including, without limitation, Hess employees or former employees); provided, however, that Minter may disclose the terms of this Agreement (a) as required by law if subject to valid legal process, and (b) to his spouse, attorneys, accountants, or tax advisors after first advising such persons of their obligation to adhere to the terms of this Agreement's confidentiality provision and after securing from them an agreement to maintain the terms of settlement strictly confidential.

6.    <u>Release of ADEA and OWBPA Claims</u>. **MINTER SPECIFICALLY WAIVES ALL CLAIMS ARISING UNDER THE FEDERAL AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA") AND THE OLDER WORKERS BENEFIT PROTECTION ACT ("OWBPA")**. In connection with this waiver, Minter agrees as follows:

    a. Minter is not waiving any rights or claims under the ADEA which may arise after this Agreement is executed, or any rights or claims to test the knowing and voluntary nature of this Agreement under the OWBPA.

    b. Minter acknowledges that he has voluntarily waived and released the Released Claims pursuant to this Agreement in exchange for consideration, the value of which exceeds payment or benefits to which he was already entitled.

    c. This Agreement was presented to Minter on August 26, 2022. Minter understands and agrees that he has been given twenty-one days to review and consider this Agreement before signing it. Minter understands that, to accept this Agreement and receive the benefits offered, Minter must return a signed copy of this Agreement to Hess's legal counsel within twenty-one days after delivery of this Agreement to Minter. If Minter fails to do so, this Agreement will not be binding on either party and shall be null and void as if it never existed. Minter further understands and agrees that he may use as much or as little of the twenty-one-day period as he wishes prior to signing and that he will voluntarily waive any remaining

4

       time by signing the Agreement before expiration of the twenty-one-day period. Hess and Minter agree that if they agree to change any of the terms of this Agreement in any manner after it is first delivered to Minter, even if the changes are material, the twenty-one-day period specified above will not restart or be extended.

    d. Minter may revoke his waiver and release of claims under the ADEA within seven days of signing this Agreement. Revocation must be made by delivering via FedEx or direct courier a written notice of revocation to Hess's legal counsel, Laurence E. Stuart, Stuart PC, 712 Main, Suite 1100, Houston, Texas 77002. For any such revocation to be effective, written notice must be received by no later than 5:00 p.m. Central Standard Time (U.S.) on the seventh day after Minter first signs this Agreement. Time is of the essence. If timely revoked, Minter's waiver and release of claims under the ADEA (and only that specific waiver and release) will be rendered null and void as if it never existed and such revocation shall give Hess, at its option, the unilateral right to declare this entire Agreement null and void.

7. <u>Limited Eligibility for Hiring</u>. Absent the prior written consent of Hess provided by an officer of Hess, Minter agrees not to seek or accept any employment including, without limitation, direct employment, indirect employment, and work as an independent contractor or consultant for, with, or on behalf of Hess within the twelve-month period immediately following the Effective Date of this Agreement.

8. <u>Additional Representations</u>. Minter, knowing that Hess is relying upon his affirmations, representations, and warranties set forth below, and intending that Hess enter into this Agreement in reliance on same, affirms, represents, and warrants as follows.

    a. Minter is of sound mound and is otherwise fully competent to execute this Agreement.

    b. Minter has full authority to execute this Agreement.

    c. Minter has not assigned or transferred any claim or right released or waived pursuant to this Agreement. Except as otherwise set forth herein, no person or entity other than Minter or his counsel has, or has had, any interest in the Released Claims.

    d. other than the Lawsuit, Minter has not filed or caused to be filed or is not presently a party to any legal or administrative claim against Hess or Chippewa.

    e. Minter understands that, except for the exceptions set out above in this Agreement, this Agreement has the effect of waiving and releasing all claims he has or may have had against Hess and/or Chippewa as of the Effective Date.

    f. Minter had a reasonable amount of time to consult with his attorneys before signing this Agreement.

g. Minter is knowingly and voluntarily entering into this Agreement and has relied solely and completely upon his personal judgment and the advice of his own attorneys in entering into this Agreement.

9. <u>Entire Agreement</u>. This Agreement constitutes the Parties' entire agreement concerning the subject matter it addresses, superseding all prior written and verbal promises and agreements. In deciding to sign this Agreement, Minter has not relied on any statements, promises, or agreements other than the express terms of this Agreement. This Agreement can be modified only by a writing of like formality signed by all Parties. No oral statements by any employee, agent, or attorney of Hess shall modify or otherwise affect the terms and provisions of this Agreement.

10. <u>Enforcement</u>. Any party found to be in breach of this Agreement by a court of competent jurisdiction will be required to pay, in addition to damages, all taxable court costs, all other incidental and consequential costs incurred, and all expert witness fees and reasonable attorneys' fees incurred by the prevailing party in connection with establishing that such a breach has occurred or obtaining legal or equitable relief for such breach.

11. <u>Construction</u>. If an ambiguity or question of intent arises with respect to any provision of this Agreement, the Agreement will be construed as if drafted jointly by the Parties, and no presumption or burden of proof will arise favoring or disfavoring either party by virtue of authorship of any of the provisions of this Agreement.

12. <u>Captions</u>. Captions of paragraphs in this Agreement are for convenience only and shall not affect the construction of any provision of this Agreement.

13. <u>Attorneys' Fees, Expenses, and Court Costs</u>. The Settlement Amount is the sole compensation payable from Hess and Chippewa to Minter. Other than the Settlement Amount, the Parties agree to pay their own attorneys' fees, court costs, and expenses related to the Lawsuit.

14. <u>Severability</u>. In case any one or more of the provisions of this Agreement is found to be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired. Further, any provision found to be invalid, illegal, or unenforceable shall be deemed, without further action on the part of the Parties to this Agreement, to be modified, amended, or limited to the minimum extent necessary to render such clauses or provisions valid and enforceable.

15. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the state of Texas, without regard for the conflicts of law rules thereof, except to the extent that federal law applies.

16. <u>Multiple Counterparts</u>. This Agreement may be executed in multiple counterparts and delivered electronically which, if fully executed, may be admitted in evidence as a duplicate original.

*The remainder of this page is intentionally left blank*
*The next page is the signature page*

7

<u>Signatures</u>

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below.

**Agreed:**

**Hess Corporation**

By: _____
Jason Wiley, as
Associate General Counsel-Litigation

Date: 9-13-2022

_____
Jason minter (Sep 6, 2022 13:53 CDT)
Jason Minter, Individually

Date: Sep 6, 2022

8